UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PATRICK MOORE, II,

    *Plaintiff,*

v.

HEIDI WASHINGTON, S. CAMPBELL,
DAVID LEACH, and JOSEPH SERAFIN,

    *Defendants*.
_____/

CASE NO. 19-cv-13616
DISTRICT JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 13)

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's Motion for a Preliminary Injunction, (ECF No. 13), be **DENIED**.

**II.   REPORT**

    **A.   Introduction**

On December 9, 2019, Plaintiff John Patrick Moore, II, who appears before the Court *pro se*, filed a complaint against Defendants Heidi Washington, S. Campbell, David Leach, and Joseph Serafin, (ECF No. 1, PageID.1) (collectively, "Defendants"), alleging a violation of his First Amendment rights under the Free Exercise Clause, the Religious Land and Institutionalized Persons Act (RLUIPA), and the Equal Protection Clause of the Fourteenth Amendment. (*Id*. at PageID.4.) At the time of filing, Plaintiff was detained at the Gus Harrison Correctional Facility in Adrian, Michigan, (*Id*. at PageID.15), although

1

he filed a notice of change of address when he was relocated to the Parnall Correctional Facility in Jackson, Michigan on January 24, 2020. (ECF No. 9.)

Plaintiff filed a complaint on December 9, 2019 (ECF No. 1), and the present Motion for preliminary injunctive relief on March 19, 2020. (ECF No. 13.) I note that, in his complaint, Plaintiff makes a request for relief in the form of "a temporary restraining order [TRO] and preliminary injunction." (ECF No. 1, PageID.13.) However, this is the only time Plaintiff references a TRO; his Motion for injunctive relief does not reference a TRO at all, only a preliminary injunction. (ECF No. 13.) As such, this Report will address only Plaintiff's Motion for a preliminary injunction.

This case was referred to the Pro Se Prisoner Early Mediation Program on January 29, 2020. (ECF No. 11.) However, this case's Pro Se Prisoner Early Mediation Program status was suspended on June 8, 2020. (ECF No. 14.) Below, I summarize the allegations set forth in the instant Motion, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

### 1. Factual Background

At the outset, I note that much of Plaintiff's handwritten complaint is illegible due to what appears to be a poor quality original or copy. However, I glean that the allegations surround Plaintiff's limited ability to wear a kufi, his religious headwear, in the prison.

Plaintiff alleges that Defendants told him to remove and not to wear his kufi. (ECF No. 1, PageID.6.) Plaintiff claims that Defendants discriminate against Muslims in the prison by banning the kufi, Muslim headwear, while allowing Jewish inmates to wear yarmulke headwear. (*Id*.) According to Plaintiff, while he was wearing his kufi, he was

2

informed by a prison employee that, according to prison policy, he was "not allowed to wear [his] kufi at any time except for to and from services." (*Id*. at PageID.7.) Plaintiff grieved this policy in the prison and provides that "[a]s a devout, practicing, Sunni Muslim at the order of Hanafi Madhab it is necessary for me to wear modest clothing and to cover my head while in public." (*Id*.) Further, Plaintiff states, "[t]his practice of dressing modestly and covering one's head is [illegible] backed by Quran's injunction[,]" and refers to "Quran 59:7, 7:26, 7:31." (*Id*.)

On June 2, 2019, Plaintiff sent a grievance to Defendant Serafin, who Plaintiff identifies as the Chaplain, requesting permission to wear his kufi at all times in the prison. (*Id*.) This request was denied, and Defendant Serafin noted in his response that, per the prison's policy, "Muslims may wear an approved item," such as a kufi, "only while attending group religious services or activities, while going directly to and from group religious services or activities, and while in their cell." (*Id*. at PageID.22.) Plaintiff filed another grievance on October 2, 2019, which was also rejected, (*Id*. at PageID.8), and a "proposal" to the "warden's forum committee" setting forth suggestions for adjusting the prison's religious headwear policy. (*Id*.) When Plaintiff received no response to that proposal, he submitted a final proposal to change the policy on October 10, 2019. (*Id*. at PageID.8-9.) Plaintiff claims that his grievances "were not resolved[,]" (*Id*. at PageID.16), and that as a result he was "denied the opportunity to properly practice [his] religious belief[.]" (*Id*.)

Plaintiff attached copies of his grievances, proposals, and the responses from the prison as exhibits to his complaint. In one of the grievances, Plaintiff argued that the partial

3

ban of religious headwear served "no penological interest[.]" (*Id*. at PageID.35.) Plaintiff specified that "[t]here is [] policy allowing secular headgear throughout the prison and policy relating to other religious headwear such as yarmulkes and hijab for women which are subject to search but otherwise permitted. MDOC can simply satisfy its security concerns by searching the kufi in the same manner it already searches secular and other religious headwear." (*Id*.) In his proposal to the warden's forum committee, Plaintiff argued that "colorful kufi are not a requirement of the Islamic faith, nor is [there] any specific color that would be preferred over others, therefore MDOC could institute a policy like the policy of the Ohio Department of Rehabilitation and Corrections allowing adherents of Al-Islam to wear a white or beige kufi throughout the facility." (*Id*. at PageID.38.)

In his complaint, Plaintiff seeks $50,000 in punitive damages, for each defendant, "to be utilized as funds to purchase kufis for Muslim prisoners," and he requests that the Michigan Department of Corrections (MDOC) "alter policy to allow a solid color, close fitted, [illegible] crocheted kufi on the prison yard and at all times." (*Id*. at PageID.14.) In his Motion, Plaintiff requests a preliminary injunction; he specified that he requests "a 90 day injunction be granted directing the Defendants in their official capacities to cease enforcement of MDOC Policy Directive 03.05.150 prohibiting inmates from wearing kufis at all times through the prison[.]" (ECF No. 13, PageID.79.)[1] At the time of the preparation of this Report, Defendants have not filed a response.

---

[1] I note that, in his complaint, Plaintiffs indicates his intent to bring suit against Defendants in both their individual and official capacities. (ECF No. 1, PageID.2-3.)

### B. Motion for Preliminary Injunction

Plaintiff moves for a preliminary injunction which would require that the prison stop enforcing its internal policy which limits Plaintiff's ability to wear his kufi. (*Id*). When considering whether to issue preliminary injunctive relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). Because preliminary relief is "an extraordinary remedy," the movant must make a far more stringent showing of proof than that required to survive summary judgment. *Winger v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 425 (6th Cir. 2014). "Although no one factor is controlling," a movant who cannot demonstrate likelihood of success on the merits typically cannot attain preliminary relief. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Even so, plaintiffs need not present an "overwhelming" showing of potential success on the merits in order to prevail in their motion. *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 679 (S.D. Ohio 2012). "[W]here a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014).

Plaintiff alleges a violation of the First Amendment Free Exercise Clause, a violation of RLUIPA, and a violation of the Equal Protection Clause of the Fourteenth Amendment. I address each in turn.

### 1. First Amendment Free Exercise Clause standards

The First Amendment Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (citing U.S. Const. amend. I). Where, as here, an inmate "challenges prison policies under the Free Exercise Clause, Supreme Court precedent instructs us to follow the standard formulated in *Turner v. Safley*, 482 U.S. 78 (1987): '[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Maye*, 915 F.3d at 1083 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner*, 482 U.S. at 89)); *see also Brown v. Johnson*, 743 F.2d 408, 411–12 (6th Cir. 1984) ("Where an inmate's religious freedom is at stake, correctional officials may only adopt regulations which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline.").

"Although the Sixth Circuit has not specifically addressed an inmate seeking to wear a kufi, many other Circuits have held that restrictions on religious headgear (like a kufi) are valid when the defendants state a legitimate penological interest in doing so." *Pleasant-Bey v. Shelby Twp. Gov't*, 2:17-cv-02502, 2019 WL 5654993, at *3 (W.D. Tenn. Oct. 31, 2019) (citing *Portley-El v. Zavaras*, 188 F.3d 519 (10th Cir. 1999) (holding a religious headgear policy was valid "[b]ecause such religious headgear may be used to conceal

6

drugs, weapons, or other contraband, and may spark internal violence among prisoners[.]"); *Freeman v. Arapaio*, 125 F.3d 732, 736 (9th Cir. 1997), overruled on other grounds by *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008) ("[T]o establish a free exercise violation, [plaintiff] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests."); *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) ("Allowing inmates to wear . . . religious articles . . . conceivably could undermine the TDJC's legitimate penological interests, primarily its overriding concern for prison security."); *Young v. Lane*, 922 F.2d 370, 374 (7th Cir. 1991) (rejecting a challenge to a rule limiting religious headgear when the defendant stated a strong interest in uniform dress regulations); *Rogers v. Scurr*, 676 F.2d 1211, 1216 (8th Cir. 1982) (finding no constitutional violation by the limitation of religious garb where the defendants asserted a need to safeguard institutional security); *St. Claire v. Cuyler*, 634 F.2d 109, 116 (3d Cir. 1980) (upholding limitations on religious headgear for security reasons)).

While the Sixth Circuit has not ruled on this issue particularly, it has ruled on an ancillary issue. In *Davis v. Clinton*, 74 F. App'x 452, 455 (6th Cir. 2003), the Sixth Circuit held that the denial of wearing "religious garb" every day is validly related to penological interests:

> The district court also properly dismissed Davis's claim that he was improperly prevented from wearing religious garb on a daily basis. Although inmates retain their First Amendment right to exercise their religion, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), an inmate's constitutional rights may be impinged by a prison regulation if the regulation is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *accord Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir.1999). Here, Davis acknowledged that the policy limiting the wearing of

7

religious garb to religious holidays was imposed for security reasons, and thus the new policy is reasonably related to legitimate penological interests.

### 2. RLUIPA standards

Plaintiff also raises a claim concerning the RLUIPA. In *Holt v. Hobbs*, 574 U.S. 352 (2015), the Supreme Court summarized the general purpose of RLUIPA:

> RLUIPA concerns two areas of government activity: Section 2 governs land-use regulation, [42 U.S.C.] § 2000cc; and Section 3—the provision at issue in this case—governs religious exercise by institutionalized persons, § 2000cc–1. Section 3 mirrors RFRA and provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." § 2000cc–1(a). RLUIPA thus allows prisoners "to seek religious accommodations pursuant to the same standard as set forth in RFRA." *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 436 (2006).

*Holt*, 574 U.S. at 357-358. Under RLUIPA, Plaintiff bears "the initial burden of proving that the Department's [] policy implicates his religious exercise." *Id*. at 360. The RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief, but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation[.]" *Id*. at 360-361 (quotations omitted). Here, the religious exercise at issue is Plaintiff's unrestricted ability to wear a kufi, which Plaintiff "believes is a dictate of his religious faith[.]" *Id*. There is no evidence in the record to indicate that Defendants dispute the sincerity of Plaintiff's belief. Plaintiff also bears the burden of establishing that the prison's policy substantially burdened his exercise of religion. *Id*. at 361.

"While the phrase 'substantial burden' is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Orum v. Michigan Department of Corrections*, No. 2:16-cv-00109, 2019 WL 2076996, at *3 (W.D. Mich. April 8, 2019) (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007)). "Similarly, if a policy requires a petitioner to 'engage in conduct that seriously violates [his] religious beliefs' or face disciplinary action, then the burden is substantial." *Orum*, 2019 WL 2076996, at *4 (quoting *Holt*, 574 U.S. at 361). In contrast, "a burden is less than substantial where it imposes merely an inconvenience on religious exercise or does not pressure the individual to violate his or her religious beliefs." *Orum*, 2019 WL 2076996, at *4 (quotations omitted).

### 3. Fourteenth Amendment Equal Protection standards

"The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws.'" *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (quoting U.S. Const., amend. XIV, § 1). "'The Clause embodies the principle that all persons similarly situated should be treated alike.'" *Maye*, 915 F.3d at 1085 (quoting *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)). Further, in establishing "an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye*, 915 F.3d at 1085 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)).

### 4.     **Likelihood of Success on the Merits**

I now turn to the likelihood of success on the merits of Plaintiff's allegations. In *Tolliver v. Noble*, 2:16-cv-1020, 2019 WL 2559512, at *8-9 (S.D. Ohio June 21, 2019), the Court addressed a similar situation regarding a prisoner's motion for preliminary injunction, and relied upon the decision in *Moore v. Cruse*, No. 2:12-CV-609, 2013 WL 6578935 (S.D. Ohio Dec. 16, 2013), *report and recommendation adopted*, No. 2:12-CV-609, 2014 WL 878864 (S.D. Ohio Mar. 5, 2014).

In *Moore*, the Court held that a prisoner's constitutional rights were not violated by being required to have paperwork for his kufi. *Moore*, 2013 WL 6578935, at *5. In analyzing a motion for summary judgment, the *Moore* Court explained:

> Defendants' actions did not unconstitutionally infringe Plaintiff's free exercise of religion. Significantly, Defendant Cruse did not prohibit Plaintiff from all use of religious headgear; rather, Defendant Cruse informed Plaintiff that "in order to wear religious headgear in the gym he must provide the proper religious affiliation paperwork." Declaration of Brent Cruse, ¶ 6. This requirement *did not substantially burden* Plaintiff's freedom to wear the religious headgear. *See Treesh v. Bobb–Itt*, No. 2:10–cv–211, 2011 WL 3837099, at *4 (S.D. Ohio Aug. 29, 2011).

*Moore*, 2013 WL 6578935, at *6 (emphasis added). The Court in *Moore* also found that prisoners' ability to wear religious headgear could have a legitimate relationship to penological interests, such as prison security:

> Allowing inmates to wear religious headgear in areas outside their cells and during activities other than religious services "conceivably could undermine the [prison's] legitimate penological interests, primarily its overriding concern for prison security." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) (holding that "prison regulations restricting the use of Kufi caps and religious insignia bore reasonable relationship to legitimate penological interest of prison security.").

10

*Moore*, 2013 WL 6578935, at *6. The *Tolliver* Court reached the same conclusion. There, the plaintiff complained of a prison policy requiring him to wear only a "white or beige" kufi. *Tolliver*, 2019 WL 2559512, at *7. The Court in *Tolliver*, analyzing a motion for preliminary injunction, did not find that the prison's policy concerning religious headgear substantially burdened the plaintiff's exercise of his religion, and instead found that "these are precisely the type of issues to which the Court will defer to the expertise and experience of prison administrators." *Tolliver*, 2019 WL 2559512, at *9 (citing *Moore*, 2013 WL 6578935, at *6 (finding that policy regarding religious headgear was reasonably related to penological interests)). There, the plaintiff's request for a preliminary injunction failed. *Tolliver*, 2019 WL 2559512, at *9.

I reiterate that because preliminary relief is "an extraordinary remedy," Plaintiff must make a far more stringent showing of proof than that required to survive summary judgment. *Winger*, 555 U.S. at 24. And where, as in this case, "a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango*, 2014 WL 3894652, at *2.

First, Plaintiff's First Amendment Free Exercise claim does not suggest a likelihood of success on the merits. "[C]orrectional officials may only adopt regulations which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline[,]" *Brown v. Johnson*, 743 F.2d 408, 411–12 (6th Cir. 1984), and various

11

Circuits[2] have found numerous valid penological justifications for limiting the use of religious headwear in a prison. This Court has concluded the same. *See Horacek v. Wilson*, No. 07–13822, 2009 WL 861248, at *5 (E.D. Mich. March 30, 2009) ("The magistrate judge concluded that the policy [limiting the prisoner's ability to wear a yarmulke outside of his cell] is rationally related to legitimate penological concerns. The Court agrees."). Similarly, here, it is unlikely that Plaintiff would be successful on the merits of his First Amendment Free Exercise claim considering the likely valid penological interest in restricting the wear of religious headgear.

Second, Plaintiff has also failed to demonstrate that the prison's policy has substantially burdened his exercise of religion under the RLUIPA. *Holt*, 574 U.S. at 361. "[A] burden is less than substantial where it imposes merely an inconvenience on religious exercise or does not pressure the individual to violate his or her religious beliefs." *Orum*, 2019 WL 2076996, at *4 (citations omitted). Here, as in *Tolliver*, the prison's policy concerning religious headgear did not substantially burden the plaintiff's exercise of his religion; rather, "these are precisely the type of issues to which the Court will defer to the expertise and experience of prison administrators." *Tolliver*, 2019 WL 2559512, at *9 (citing *Moore*, 2013 WL 6578935, at *6). Plaintiff is allowed, under the prison policy, to wear his kufi in his cell, on to way to and back from religious services, and during religious services—while Plaintiff wishes to wear his kufi at all times, the present limitation imposed

---

[2] Again, I note that the Sixth Circuit does not appear to have addressed this issue yet. *See Pleasant-Bey v. Shelby Twp. Gov't*, 2:17-cv-02502, 2019 WL 5654993, at *3 (W.D. Tenn. Oct. 31, 2019) ("Although the Sixth Circuit has not specifically addressed an inmate seeking to wear a kufi, many other Circuits have held that restrictions on religious headgear (like a kufi) are valid when the defendants state a legitimate penological interest in doing so.").

by the prison does not restrict his ability to wear his kufi entirely. (ECF No. 1, PageID.22.) As in *Moore*, Defendants here "did not prohibit Plaintiff from all use of religious headgear . . . This requirement did not substantially burden Plaintiff's freedom to wear the religious headgear." *Moore*, 2013 WL 6578935, at *6. I conclude that it is unlikely Plaintiff would be successful on the merits of this claim.

Finally, I address Plaintiff's claim under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff alleges that "[t]here is [] policy allowing secular headgear throughout the prison and policy relating to other religious headwear such as yarmulkes and hijab for women which are subject to search but otherwise permitted. MDOC can simply satisfy its security concerns by searching the kufi in the same manner it already searches secular other religious headwear." (ECF No. 1, PageID.35.)

I reiterate that to establish "an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye*, 915 F.3d at 1085. In *Maye*, the Court found that the defendant's actions violated the Equal Protection Clause; there, the plaintiff, who was not permitted to participate in the Eid feast, alleged that he was "similarly situated in all material respects to members of Al-Islam who were permitted to participate in the Eid feast, noting their mutual observance of the central tenets of Islam as well as his Level I inmate status." *Maye*, 915 F.3d at 1086. But the Court found that the defendant "made a conscious decision to treat religious adherents of Al-Islam differently from plaintiff and other adherents of the Nation of Islam" and "suggested to [Maye] that if he wanted to receive the same treatment that Al-Islam members received, he should change his religious sect to Al-Islam." *Id*. These allegations

13

established "a facially discriminatory distinction between the Nation of Islam and Al-Islam sects would burden Maye's fundamental rights to religious freedom under the First Amendment, which means an invidious purpose may be inferred." *Id*.

The present case is distinguishable from *Maye*. While Plaintiff alleges that Jewish inmates are allowed to wear a yarmulke and female Muslim inmates may wear a hijab, the facts are scant as to whether those individuals face any restrictions on their use of religious headwear; even assuming they do not, Plaintiff has not established, on these allegations, "more than differential treatment alone—a discriminatory intent or purpose is required." *Maye*, 915 F.3d at 1085. Plaintiff undermines his own cause in noting that Muslim women *are* allowed to wear religious headwear since this would undercut any inchoate allegation of discrimination against Muslims.

Unlike in *Maye*, Plaintiff here has not alleged that Defendants acted with intent or purpose to discriminate against Plaintiff. *See Horacek v. Wilson*, No. 07–13822, 2009 WL 861248, at *5 (E.D. Mich. March 30, 2009) ("There is also no evidence that defendants acted with any discriminatory intent or purpose necessary to make out an equal protection claim with regard to either the provision of Kosher meals or plaintiff's ability to wear a yarmulke. Plaintiff's objections present the same arguments rejected by the magistrate judge. This claim also fails."); *Young v. Ice*, No. 1:14 CV 1475, 2015 WL 471675, at *3 (N.D. Ohio Feb. 4, 2015) ("Plaintiff has not alleged facts to demonstrate disparate treatment. He claims he was told to cover his kufi with a hairnet while other inmates were not told to cover their ball caps or their skull caps . . . To the extent his claim is based on

14

the fact that he was asked to use a hairnet when other inmates were not asked, his claim is without merit."). I conclude that this claim, as well, is unlikely to succeed on its merits.

"Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also In re DeLorean Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985) (noting that the district court may decline to analyze all four factors where fewer factors are dispositive of the issue); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("Not all of these factors fully need be established for an injunction to be proper . . . In *Sandison v. Michigan High School Athletic Association*, 64 F.3d 1026, 1037 (6th Cir.1995), for example, we concluded that there was no likelihood of success on the merits and reversed the grant of injunctive relief without considering it necessary to address the other three factors."). Because of Plaintiff's failure to allege facts which support a likelihood of success on the merits, I recommend that Plaintiff's Motion for a Preliminary Injunction be denied.

### C.   Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Plaintiff's Motion for a Preliminary Injunction, (Doc. 13), be **DENIED.**

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 15, 2020                                     S/ PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to John Patrick Moore, II #713922 at Parnall Correctional Facility-SMT, 1780 E. Parnall, Jackson, MI 49201.

Date: July 15, 2020                              By s/Kristen Castaneda
                                                                                                  Case Manager