UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN PATRICK MOORE, II,<br><br>Plaintiff,<br><br>v.<br><br>HEIDI WASHINGTON, *et al*.,<br><br>Defendants. | Case No. 2:19-cv-13616<br>Honorable George Caram Steeh<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND TO DENY AS MOOT
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [ECF NO. 54, 70]**

## I.    Introduction

Plaintiff John Patrick Moore, II, a Muslim prisoner of the Michigan Department of Corrections (MDOC), sues Heidi Washington, Sherman Campbell, David Leach, Joseph Serafin, Steven Adamson, and Acting Warden Dave Shaver, alleging violations of his religious rights limiting the times he can wear a kufi.  ECF No. 41.  The Honorable George Caram Steeh referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 31.

Moore moves for class certification and defendants move for summary judgment.  ECF No. 54; ECF No. 70.  For the reasons below, the

Court recommends that Moore's motion for class certification be denied as moot; and that defendants' motion for summary judgment be denied.

## II.     Background

Moore is a Sunni Muslim of the Hanafi Madhab faith and says that he has a "sincere religious belief that his religion requires him to wear the kufi in public." ECF No. 41, PageID.263. A kufi is a "small hat." *Id.*, PageID.264. At the time,[1] MDOC Policy Directive (PD) 05.03.150 permitted male Muslims to wear a kufi "<u>only</u> while attending group religious services or activities, while going directly to and from group religious services or activities, and while in their cell." ECF No. 70-3, PageID.722 (emphasis in original). Yet prisoners could always wear other head coverings, including yarmulke for Jewish men and hijab for Muslim women. ECF No. 70-3, PageID.722-723.

While an inmate at MDOC's Gus Harrison Correctional Facility (ARF) in June 2019, Moore requested a special religious accommodation allowing him to wear his kufi all the time. ECF No. 70-2, PageID.711. Defendant Serafin, the former chaplain at ARF, denied Moore's request because of the policy directive. ECF No. 70-4, PageID.727. In August 2019, Moore

---

[1] The MDOC changed their policy in February 2021 and now permits male Muslims to always wear a kufi. ECF No. 58-3, PageID.560.

2

sent a second letter to Serafin asking "who I need to contact or how I need to go about asking for a policy review and change" for wearing religious headgear.  ECF No. 70-5, PageID.729.  Moore stated that he received no response, and defendants conceded that the MDOC cannot locate a response.  ECF No. 70, PageID.686.

In October 2019, Moore filed a grievance about the policy directive "as it is applied to [him]."  ECF No. 70-6, PageID.731.  In the grievance, Moore stated that he had spoken to the chaplain and his counselor, and tried to speak to the deputy warden, requesting permission to wear his kufi at all times because of his religious beliefs, but his requests were denied.  *Id*.  Moore noted that Jewish men could wear their religious headgear in the manner that he wished to wear his.  *Id*.  The MDOC denied Moore's grievance:

> A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant.  If a prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 'Prisoner Housing Unit Representatives/Warden's Forum.'

ECF No. 70-6, PageID.732.  Moore insisted that he was grieving the policy as applied to him—not the content of the policy—but the MDOC upheld their rejection through Step III of the grievance process.  ECF No. 70-6,

3

PageID.736.  Defendant Campbell, the ARF warden, was the grievance respondent for Step II.  ECF No. 73-10, PageID.869-871.

Moore filed two other relevant grievances at ARF: one alleging that he did not receive a kufi that he ordered, which was denied as a "non-grievable" issue; and another grieving the lack of a response from the Warden's Forum, which was rejected by respondent Campbell through Step II.  ECF No. 73-14, PageID.873-875; ECF No. 73-16, PageID.877.

Moore was transferred to Parnall Correctional Facility (SMT).  He then sent a letter to Defendant Shaver, the SMT warden, asking to be allowed to wear his kufi at all times and to have the staff "stop harassing [him] about [his] kufi."  ECF No. 70-8, PageID.743.  In October 2020, Moore filed a grievance describing his unanswered requests for a religious accommodation to wear his kufi all the time.  ECF No. 70-9, PageID.745; ECF No. 73-20, PageID.881.  The grievance was denied because it challenged the content of a policy and Moore appealed to Step II.  ECF No. 73-21, PageID.882-883.  Moore filed another grievance about allowing him to wear a kufi for court appearances, which was rejected as "duplicative" and upheld through Step III.  ECF No. 70-9, PageID.745-746.  Shaver was the Step II respondent for both grievances.  *Id.*; ECF No. 73-21, PageID.882-883.

In December 2020, Moore filed his second amended complaint. ECF No. 41. The next month, the parties stipulated to dismiss without prejudice Moore's claim for money damages under the Religious Land Use and Institutionalized Persons Act (RLUIPA); claims for money damages against defendants in their official capacities under the First and Fourteenth Amendments; and claims against David Leach. ECF No. 50. The parties also agreed in August 2021 to dismiss Moore's claim for injunctive relief because the "MDOC changed the policy to allow all Muslim prisoners to wear their Kufi at all times as a result of this litigation." ECF No. 69, PageID.676; ECF No. 73, PageID.833-834.

Thus, the only remaining issues are Moore's individual-capacity claims under the First and Fourteenth Amendments. ECF No. 41, PageID.271-272.

### III. Analysis

#### Motion to Certify Class

In April 2021, Moore moved for class certification to prevent the MDOC from prohibiting class members from wearing a kufi at all times. ECF No. 54. Class actions are permitted under Federal Rule of Civil Procedure 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." But Moore's motion to certify a class is now moot because he agreed to dismiss his claim for injunctive relief. ECF No. 69, PageID.676.

The Court thus recommends that Moore's motion for class certification be denied as moot.

## Motion for Summary Judgment

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue

for trial. *Id*. at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendants move for summary judgment on the grounds that Moore failed to exhaust his administrative remedies against Washington, Adamson, Campbell, and Shaver; and that defendants enjoy qualified immunity.[2] The motion lacks merit.

### A.

The Prison Litigation Reform Act requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (emphasis in original). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the

---

[2] Defendants also argued in their motion that Moore's claim for damages under RLUIPA are precluded under binding Sixth Circuit precedent. But as noted, the parties had agreed to dismiss the claims for damages under RLUIPA and the Court denied Moore's effort to revive that claim. ECF No. 50; ECF No. 75.

PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). "But a prisoner countering a motion alleging failure to exhaust must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Parks v Corr.*, 2021 WL 3533422, at *3 (E.D. Mich. May 17, 2021) (internal quotation and citation omitted), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021). Summary judgment based on failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC Policy Directive 03.02.130 has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances.[3] A prisoner fails to properly exhaust his administrative remedies under the policy directive when he fails to "specify the names of each person from whom he seeks relief." *Mattox v. Edelman*,

---

[3] The Policy Directive is available at: https://www.michigan.gov/documents/corrections/03_02_130_649677_7.pdf (last viewed 1/3/2022).

851 F.3d 583, 590 (6th Cir. 2017). A grievant must include "[d]ates, times, places, and *names of all those involved in the issue being grieved are to be included*" in Step I of the grievance. *Id.* (emphasis in original); MDOC PD 03.02.130.

Defendants concede that Moore exhausted his administrative remedies against Serafin, but they argue that Moore failed to exhaust his remedies against Washington, Adamson, Campbell, and Shaver because he did not name them in the exhausted grievances. ECF No. 70, PageID.692. Moore filed two relevant grievances through all three steps of the process—Grievances ARF 19-10-2405-27B and SMT 20-20-101235-28A. ECF No. 70-6, PageID.731-736; ECF No. 70-9, PageID.745-749. Neither named Washington, Adamson, Campbell, or Shaver in the first step.

But Moore counters that he "exhausted his administrative remedies by following the instructions of his grievance coordinator to go through the Warden's Forum." ECF No. 73, PageID.836. He had reason to believe that the Warden's Forum was the proper avenue. The MDOC rejected his grievances because "[a] grievant may not grieve the content of policy or procedure" and Moore was instructed that he could direct his concerns to the Warden's Forum. ECF No. 70-6, PageID.732; ECF No. 70-9,

9

PageID.746. Moore said in grievances that he "requested that the block representative address his request for a change in policy to the Warden's Forum," that he "tried to resolve [the religious headgear issue] with…the Warden's Forum to no avail," and that he did not "hear anything from the Warden's Forum Committee even acknowledging that [his] report was heard." ECF No. 73-10, PageID.869; ECF No. 73-16, PageID.877.

The Court agrees with the MDOC that Moore's grievance was against the policy of prohibiting Muslim prisoners from always wearing their kufi and that his complaint was therefore not grievable. But prisoners "'cannot be required to exhaust administrative remedies regarding non-grievable issues.'" *Peoples v. Bauman*, No. 16-2096, 2017 WL 7050280, at *4 (6th Cir. Sept. 5, 2017) (quoting *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004)). Thus, Moore did not have to grieve the MDOC's policy about wearing his kufi. *Blackburn v. Whitmer*, No. 20-12579, 2021 WL 248686, at *4 (E.D. Mich. Jan. 26, 2021).

The Court also questions the instruction that Moore present his complaint to the Warden's Forum. Under the MDOC policy directive for the Warden's Forum, Moore had no direct right to bring an issue to the Forum; only unit representatives may raise issues in the Warden's Forum. ECF No. 73-29, PageID.925, MDOC PD 04.01.150, ¶ J. Unit representatives

10

are "encouraged to solicit input from those they represent and to give consideration to the views expressed," but nothing in the policy requires them to raise a prisoner's concern to the Forum. *Id.*, ¶ K. In fact, the policy prohibits unit representatives from using "their positions to present individual complaints to the administration." *Id.* Thus, the Warden's Forum "is not an appropriate place to argue that a specific prisoner's constitutional rights were violated." *Lopp v. Washington*, No. 1:19-CV-540, 2021 WL 3033266, at *1 (W.D. Mich. July 19, 2021).

Defendants fail to show that Moore had an available administrative remedy. Thus, their exhaustion argument lacks merit.

**B.**

The Court next addresses whether defendants are entitled to qualified immunity. Qualified immunity applies when, viewing the evidence in a light most favorable to the plaintiff, the defendant did not violate a clearly established constitutional right. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). In the Sixth Circuit, a constitutional violation is established by binding precedent from the Supreme Court or this circuit, and a court should look beyond those precedents only in extraordinary cases. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th

11

Cir. 1993), *superseded by statute on other grounds as stated in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407-08 (6th Cir. 2007).

The Supreme Court has warned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation and quotation marks omitted). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). A case need not be directly on point to be clearly established, but existing precedent must give officials fair warning that the conduct at issue is unlawful. *Kisela*, 138 S. Ct. at 1152-53; *see also Taylor v. Riojas*, 141 S. Ct. 52 (2020) (holding that no reasonable officer could have concluded that conditions of confinement were constitutionally permissible under the extreme circumstances of the case despite no precedent with similar facts).

Here, existing precedent would have given officials ample warning that prohibiting Muslim prisoners from wearing their kufi at all times would violate their constitutional rights. In particular, the Court points to *Maye v. Klee*, 915 F.3d 1076 (6th Cir. 2019). The question presented in *Maye* was whether the defendants infringed on the Muslim prisoner's religious beliefs

12

and violated his equal protection rights by twice preventing him from participating in Eid al-Fir, an annual religious feast. *Id*. at 1079-83. A chaplain had told the plaintiff that he could attend Eid "if he changed his religion from Nation of Islam to Al-Islam." *Id*. at 1079.

The *Maye* court emphasized that the free exercise of the First Amendment, which applies to the states through the Fourteenth Amendment, prohibits prison regulations that infringe on prisoners' sincerely-held religious beliefs "without any valid penological justification." *Id*. at 1083. To address the plaintiff's claims, the court looked to an earlier Sixth Circuit holding that denying Jewish prisoners' the ability to participate in Passover violated their First Amendment rights. *Id*. at 1083 (citing *Whitney v. Brown*, 882 F.2d 1068, 1073 (6th Cir. 1989)). The *Maye* court found that denying a Muslim prisoner the ability to participate in his religious feast was equally violative. *Id*.

The *Maye* defendants also violated the Equal Protection Clause, which "embodies the principle that all persons similarly situated should be treated alike." *Id.* at 1085 (citation and quotation marks omitted). Courts "treat as presumptively invidious those classifications that disadvantage a 'suspect class,' or that impinge upon the exercise of a 'fundamental right.'" *Id*. (citation and quotation marks omitted). The plaintiff sufficiently alleged a

13

violation of his equal rights because the defendants made "a facially discriminatory distinction between the Nation of Islam and Al-Islam sects [that] would burden Maye's fundamental rights to religious freedom under the First Amendment, which means an invidious purpose may be inferred." *Id*. at 1086. Here, PD 05.03.150 made a facially discriminatory distinction between Jewish men, who could wear their religious head coverings at all time, and Muslim men, who could wear a kufi only in their cells or around religious activities. ECF No. 70-3, PageID.722-723.

The background to *Maye* is also key. The case followed *Dowdy-El v. Caruso*, a case brought by Muslim inmates challenging an earlier version of PD 05.03.150 that failed "to accommodate their religious requests while accommodating the 'needs of similarly situated Jewish inmates.'" *Maye*, 915 F.3d at 1080 (citing *Dowdy-El*, 2:06-CV-11765 (E.D. Mich. filed Apr. 12, 2006) (Cohn, J.), ECF No. 37, PageID.133-135). The district judge in *Dowdy-El* granted the plaintiffs' motion for summary judgment, finding that MDOC officials had violated the plaintiffs' First and Fourteenth Amendment rights. *Id.* at 1080-81 (citing *Dowdy-El*, ECF No. 85, PageID.2872-2873).

The *Maye* court found that *Dowdy-El* provided "the most obvious precedent" but that other earlier opinions clearly established the rights the plaintiff asserted. *Id*. at 1087 (citing *Whitney v. Brown*, 882 F.2d 1068,

14

1073 (6th Cir. 1989) (holding that denying Jewish inmates the ability to participate in Passover violated their First Amendment rights); *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *Fowler v. Rhode Island*, 345 U.S. 67, 69 (1953) (state's concession that its ordinance treated some religious groups preferably to Jehovah's Witnesses was barred by the First and Fourteenth Amendments); *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (A law that "invades a 'fundamental right,' such as speech or religious freedom…will be sustained only if it is 'suitably tailored to serve a compelling state interest.'") (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)).

*Maye* and the precedent it relied on gave defendants abundant notice that they were violating Moore's First and Fourteenth Amendment rights when they denied him the right to always wear a kufi, while permitting Jewish men to always wear their religious head coverings.

Defendants cite *PleasantBey v. Shelby Twp. Gov't*, which said, "Although the Sixth Circuit has not specifically addressed an inmate seeking to wear a kufi, many other Circuits have held that restrictions on religious headgear (like a kufi) are valid when the defendants state a

15

legitimate penological interest in doing so." 2:17-cv-02502, 2019 WL 5654993, at *3 (W.D. Tenn. Oct. 31, 2019) (citing *Portley-El v. Zavaras*, 188 F.3d 519 (10th Cir. 1999) (holding that a religious headgear policy was valid "[b]ecause such religious headgear may be used to conceal drugs, weapons, or other contraband, and may spark internal violence among prisoners[.]")). And it is true that various circuits have found penological justifications for limiting religious headwear in prisons.[4] Defendants argue that they had a legitimate interest to restrict prisoner headgear based on security. ECF 73, PageID.696-697.

In support, defendants cite the testimony of Jeremy Bush, the MDOC Deputy Director of Correctional Facilities Administration, as saying that a head covering could be used to conceal contraband and thus could be a security concern. *Id.*, PageID.696; ECF No. 70-13, PageID.772. But Bush did not know much about kufis and knew nothing about MDOC's reasoning for limiting when Muslim prisoners could wear them. ECF No. 70-13, PageID.772. And Defendant Campbell, the ARF warden, denied that

---

[4] *See Freeman v. Arapaio*, 125 F.3d 732, 736 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992); *Young v. Lane*, 922 F.2d 370, 374 (7th Cir. 1991); *Rogers v. Scurr*, 676 F.2d 1211, 1216 (8th Cir. 1982).

discussions about the limitation on wearing kufis were about hiding contraband. ECF No. 73-36, PageID.951. Defendants also could not articulate how kufis are different than yarmulkes. A chaplain said that the distinction given to kufis, in contrast to yarmulkes and baseball caps, "struck [her] as odd." ECF No. 73-35, PageID.949. And Adrian Dirschell, the current special activities coordinator of MDOC, testified that kufis and yarmulkes were "very similar," that "a lot of times you can't tell the difference," and that there was no distinguishable security concern between the two headgear. ECF No. 73-32, PageID.943. This testimony from MDOC officials reveals that defendants' purported security concern is mere pretext.

For Moore's First Amendment claim, defendants emphasize that Dirschell testified that he did not believe that Islamic law required followers to also wear a kufi. *Id*.; ECF No. 70, PageID.696. Defendants argue, "While that conclusion may be criticized it is not an irrational conclusion that there was distinction between Jewish law and Islamic law." ECF No. 70, PageID.696. But the precedent does not excuse policy makers who rely on unfounded conclusions that result in discriminatory treatment. To be permissible under the First Amendment, MDOC's regulation must have had a "valid, rational connection" to a "legitimate governmental interest," and

17

"the governmental objective must be a legitimate and neutral one." *Turner*, 482 U.S. at 89 (citation and quotation marks omitted). Dirschell's lack of knowledge is not a valid justification, and the policy of discriminating against Muslim men related to head coverings is not neutral.

Defendants also argue that "Moore submitted no evidence to show that [their] behavior was motivated by intentional discrimination." ECF No.70, PageID.702; ECF No. 74, PageID.1001. But courts treat classifications that infringe on the exercise of a fundamental right—like religious freedom—as "presumptively invidious." *Koger v. Mohr*, 964 F.3d 532, 544 (6th Cir. 2020). As *Koger* stated, "a facially discriminatory distinction between" Judaism and Islam "would burden [Moore's] fundamental rights to religious freedom under the First Amendment, which means an invidious purpose may be inferred. Therefore, [Moore] has sufficiently alleged that [defendants] deprived him of his right to equal protection under the law." *Id.* at 545 (citing *Maye*, 915 F.3d at 1086).

For these reasons, defendants' request for summary judgment on qualified immunity grounds should be rejected.

## IV. Conclusion

The Court thus **RECOMMENDS** that Moore's motion for class certification, ECF No. 54, be **DENIED AS MOOT**, and that defendants' motion for summary judgment, ECF No. 70, be **DENIED**.

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: February 3, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 3, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
